# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>LOEWEN GROUP INTERNATIONAL, INC., et al.,<br><br>      Debtors. | |
| ALDERWOODS (DELAWARE), INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>RIGHTSTAR INTERNATIONAL, INC., et al.,<br><br>      Defendants. | Adv. Pro. No. 05-90130<br><br><br><br><br>Re: Docket No. 303 |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Alderwoods (Delaware), Inc. ("Alderwoods"), contends that the "RightStar Defendants" made an $8 million payment (and other transfers) to defendant Vestin Mortgage, Inc. ("Vestin"), with the actual intent to hinder, delay, or defraud their creditors, including Alderwoods, and that the transfers are avoidable under Haw. Rev. Stat. § 651C-4(a)(1). Alderwoods also asserts a civil

conspiracy claim based on the same transfers. Vestin seeks summary judgment in its favor on these claims (docket no. 303).

Because there are genuine issues of material fact concerning the scope of Vestin's security interest, and concerning RightStar's intentions and Vestin's good faith, I will deny Vestin's motion.

1.

Vestin argues that the transfers are not avoidable as a matter of law. Vestin relies on the correct legal principle that:

> Repayments of fully secured obligations – where a transfer results in a dollar for dollar reduction in the debtor's liability – do not hinder, delay or defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach, do not result in a diminution of the debtor's estate, and therefore cannot be fraudulent.

In re First Alliance Mortg. Co., 298 B.R. 652, 665 (C.D. Cal. 2003), aff'd, 471 F.3d 977 (9th Cir. 2006). In this context, an obligation is "fully secured" if the collateral for the obligation "had a greater value than the amount borrowed." Id.

There is no evidence in the record that the value of Vestin's collateral is (or ever was) greater than the amount owed to Vestin. Thus, Vestin has not established the factual predicate of this legal argument.

U.S. Bankruptcy Court - Hawaii   #05-90130   Dkt # 327   Filed 11/03/09   Page 2 of 7

There is another way in which a security interest protects a transferee from a fraudulent transfer claim. If the transferee had a valid, unavoidable security interest in the transferred property, and the secured claim is reduced dollar for dollar by the value of the transferred property, there is no fraudulent transfer. This is so because the Hawaii Uniform Fraudulent Transfer Act defines "transfer" as "every mode . . . of disposing of . . . an asset," and an "asset" "does not include . . . property to the extent that it is encumbered by a valid lien." Haw. Rev. Stat. § 651C-1. Stated differently, such a transfer is not fraudulent because a secured creditor's recovery of its collateral does not diminish the assets available for distribution to other creditors. Melamed v. Lake County Nat'l Bank, 727 F.2d 1399 (6th Cir. 1984); Bear, Stearns Securities Corp. v. Gredd, 275 B.R. 190, 195 (S.D.N.Y. 2002).

Vestin argues that it has a security interest in all of RightStar's personal property, including all of RightStar's accounts (such as RightStar's rights under its contracts with consumers) and all proceeds of the accounts. Vestin argues that the money it received was the proceeds of the consumer contracts and thus part of its collateral, and that therefore its receipt of those proceeds was not a fraudulent transfer.

3

The complicating factor in this case is that RightStar operated cemeteries and the contracts in which Vestin claims a security interest are so-called "pre-need" contracts for the provision of funeral goods and services. Hawaii law requires such a business to hold payments on "pre-need" contracts in a trust account and generally forbids the withdrawal of money from the trust account until the operator earns the funds by providing the funeral goods and services. Hawaii law also forbids the creation of security interests in cemetery trust funds. Haw. Admin. R. § 16-75-44(d).

Vestin acknowledges that it does not have a security interest in the trust accounts. Vestin argues, however, that it had a security interest in the funds until they were deposited in the trust accounts and immediately after they were withdrawn from the trust accounts.

Vestin's security agreement (docket no. 304, exhibit 4, page 1) defines the scope of Vestin's collateral. The security agreement provides that Vestin's collateral did <u>not</u> include any "Surplus Funds as such term is defined in the Loan Agreement." The loan agreement does not expressly define the term "Surplus Funds," although it does use that term at least once (<u>id</u>., exhibit 1, page 17, paragraph 5.03). This gap may create an ambiguity that in turn creates a genuine issue of material fact.

4

U.S. Bankruptcy Court - Hawaii   #05-90130   Dkt # 327   Filed  11/03/09   Page 4 of 7

The loan agreement does, however, define Surplus Trust Funds (id., exhibit 1, page 6) as "any income or net capital gains from investments that may be withdrawn from the Pre-Need trust funds listed in [an attached schedule], by the Borrowers pursuant to Hawai'i Administrative Rule Section 16-75-41 . . . ."[1] Although the parties agree that the $8 million which RightStar paid to Vestin came from the cemetery trust funds, there is no evidence showing whether the withdrawn funds represented "income or net capital gains." Even assuming that the term "Surplus Funds" in the security agreement is synonymous with "Surplus Trust Funds" as defined in the loan agreement, there is a genuine issue of material fact concerning whether Vestin had a security interest in the money which RightStar paid to Vestin.

3.

Vestin also argues that a preferential transfer – a payment of a disproportionate share of the debtor's assets to one of several creditors – is not a fraudulent transfer.

Alderwoods argues that, under Hawaii law, a "preferential" transfer may be fraudulent if the transfer was made with the actual intent to hinder, delay, or

---

[1] The loan agreement also uses, but does not define, another similar term, "Trust Funds." Id. page 19 para. 5.12.

5

U.S. Bankruptcy Court - Hawaii   #05-90130   Dkt # 327   Filed 11/03/09   Page 5 of 7

defraud a creditor. Kekona v. Abastillas, 113 Haw. 174, 183, 150 P.3d 823, 832 (2006). Alderwoods contends that there are genuine issues of material fact concerning Rightstar's intentions.

Alderwoods also argues that there are at least genuine issues of material fact concerning Vestin's good faith. Alderwoods points out that the $8 million payment was due only sixty days after Vestin made the loan, and that Vestin knew or should have known that Rightstar's only source of cash at that time was the cemetery trust accounts. Alderwoods also argues that Vestin knew that Rightstar's right to withdraw funds from the cemetery trust accounts was disputed and that Alderwoods had a claim to any portion of the trust accounts which Rightstar was entitled to withdraw.

It is rarely appropriate to enter summary judgment on issues that turn on a party's subjective mental state, such as Rightstar's intent or Vestin's good faith. Valvanis v. Milgroom, 529 F.Supp. 2d 1190, 1200 (D. Haw. 2007); In re Lull, 386 B.R. 261 (Bankr. D. Haw. 2008). Alderwoods has offered enough evidence to create a triable issue of fact on these questions.

4.

The civil conspiracy claim stands or falls depending on the disposition of the fraudulent transfer claim. Summary judgment on the civil conspiracy claim

6

therefore should also be denied.

* * *

For these reasons, Vestin's motion is denied.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 11/03/2009

7